OPINION of the Court, by
Judge Logan.
The appellee exhibited his bill as heir at law to his father, to recover half of a pre-emption granted to Nicholas. M’Carty ; in which he alleges that his father purchased-paid for, and obtained from the said M’Carty his obligation for said land.
That his father was killed by the Indians in the year 1782, and that Richard Chinowith some time thereafter applied to and obtained from his mother the said obligation on M’Carty, for which he gave his own for 500 acres, 300 thereof to the appellee and 100 to each of two younger brothers.
That Chinowith delivered M’Carty’s obligation to him, and took from him one in his own name for hall of his pre-emption j and that he had settled thereon before he Obtained from the mother of the appellee M’Carty’s bond.
That during these transactions the appellee was under twenty-one years of age.
That Chinowith gave a mortgage on said land to Thomas Curry, who wa's apprised of these circumstances.
Chinowith in his answer admits that he settled on M’Carty’s pre emption, but under assurances from him if he obtained his bond given to Williamson for 500 acres of land on Pottinger’s creek, that he would give him half his said pre-emption,
He states that he did obtain said bond from Mrs. Williamson, and gave liis own for 50® acres to her three sons; but denies that M’Carty sold half of said preemption to Williamson ; and admits that he knew of his selling 500 acres on Pottinger’s creek.
He states that in the year 1776 he made an improvement where he now lives, for M’Carty, and another for Robert Jones on Pottinger’s creek ; that in 1780, M’-Carty came to this country, when he informed him of Jones’s claim ; and that M’Carty being about to go to the Monongahela country, where Jones resided, and expecting he could purchase his claim, sold half of it to Williamson for a horse to ride, and some other payments ; but owing to some misfortunes, did not go.
That the complainant, after he attained the age of 21 years, as be believes, came to him with his bond, in or- *37 tier to get a title ; and he having a bond on Robert Floyd, for 500 acres on Floyd’s Fork, but to which he' had not obtained a conveyance, sent the complainant to Floyd, to get the title from him ; at which time Floyd was ready to convey ; and the complainant agreed to take a deed from said defendant and Floyd, if they would make it to him only ; and that he, Chinowith, agreed to do so, provided the complainant would indem-Bify him against the other brothers, which-the complainant agreed to do, but never came with his security.
That he has always been, and still is ready to convey, agreeable to his bond, the 500 acres on Floyd’s Fork, having obtained a deed from Floyd. That ⅛ moreover paid M’Carty about £. 70, before he obtained His bond for said land ; and that he is a purchaser for a fair and valuable consideration, without notice of a sale of said land to the com plain ant’s father.
He died, and the suit was revived against his heirs.
Curry answers, that the land sold by M’Carty to the complainant’s father, was 500 acres, on Pottinger's creek, and no part of M’Carty’s pre-emption on the waters of Floyd’s Fork ; that the consideration was only a mare worth about £. 5, a set of old plough irons, and about four or five bushels of corn.
That he became security lor Chinowith for 400 acres of land on the waters of Floyd’s Fork, and to secure himself he took a mortgage on half of M’Carty’s preemption, where Chinowith lived ; that he had to pay about £. 300 on account of said securityship, and hás received no part thereof, but has instituted suit on the mortgage, and is a fair bona fide mortgagee, without notice of any right or claim of the complainant to the mortgaged premises. ’ . • , ,
M’Carty is dead, and his heirs were made defendants to the suit, on all of whpm, except one, process was executed ; hut they neder answered, nor was the bill taken as confessed against them, from the record certified to this court. ■ ’ '
Indeed it does not appear in the cause that the legal title is in M’Carty’s heirs to any part of their father’s pre-em;>i-!«n • nor does it appear in whom it vests. David White proves, that M’Carty told him about the yca» 17'.:o, that John War shewed him the patent for his, M’Carty’s, pre-emption, and offered hina bOO acres *38 jn Nelson county for his half thereof, “ as said May was to have cne half for clearing the whole out of the office.”
Matters itt up in aft aiifwer by way of avoidance muft be proved-*-Vol i, Maliinger vs. Worley, 196— Heading vs, Fords heir ¿>332
Mv gives big obligation to W to convey one kalf of bis preemption on Pct-Finger's creek, the. pre-emption in fait is on Floyd's fork, W, fluil have the pre-emption land on f loyd’s fork®
There is also in the cause a certified copy of the plat and certificate of survey of the said pre-emption in the name of John May, assignee of of Nicholas M’Carty. But whether a conveyance was ever made by May to M’Carty, or whether the title at law still remains in May or his heirs, does not appear in the cause.
The court however will proceed to decide upon the equity of the parties before it to the land in dispute.
It appears m the causé that Chinowith made the improvement for M’Carty op the waters of Floyd's Fork, and obtained for him his certificate of pre-emption there. But M’Carty was impressed with the belief that his pfe-emptioft lay on Pottinger's creek ; and whilst under that impression he sold half of it to Williamson, and described it to lie an said creek.
He repeatedly, if not’uniformly, declared, that Chino-with had deceived him with respect to the local situation of his land ; and ' that hé had sold to Williamson half thereof and received payment for'the same. Even after he was Correctly informed where his pre-emption lay, had seén the patent in the hands of May, and knew that Chinowith resided on said claim, he refused to sell to May, declaring he had sold his half to John Williamson.”
* It is proven he had no land on Pottinger's creek, by his own acknowledgments ; and there is no evidence in support of Chinowith’s answer, that M’Carty sold half of Jones’s pre-emption, in the expectation of purchasing it.
The land he sold was well described as his pre-emption, and an additional repugnant deácfiptietn, which attached to no land of his, ought nót to avoid the certain and specific part Of the contract. The vendor having but one tract of land, and evinced an intention of selling part thereof, by a call in the Contract for it, by its appropriate name, cannot be permitted, by the addition of other description furnished by himself, because of its repugnance and uncertainty, to avail himself of it to the injury of the vendee ; but more especially, where those calls are untrue, for want of a proper subject upon which to *perate.
*39 It is contended that the vendor sold land on Pottin-ger’s creek, and not on Floyd’s fork. The calls in the contract for land. “ on Pottinger’s creek,” and “ half of his pre-emption,” are repugnant, inasmuch as they present two places distant from each Ither, and either one of them roust be rejected, or the contract is totally void for uncertainty.
If it is applied to Pottinger’s creek, there is no part of it designated ; the pre-emption, which alone gave certainty to the bargain, being elsewhere.
It is conceived much fairer to presume that the preemption was the real subject of sale, and that the call for Pottinger’s creek was an immaterial mistake, not only because the contract called for it, and the vendor declared such to be the fact, but because such a construction gives real efficacy to the contract by having a specific and definite subject to apply to.
A contrary doctrine would be dangerous in permitting the sellers of land to avail themselves of a false descriptive call, given by them, as to the situation of the subject matter of sale, where there is enough to identify it without.
It is the duty of the court to effectuate the honest meaning of the contracting parties : and there ought to be no doubt with respect to that meaning where the parties concur in declaring it. But for one to become subsequently interested under as full a knowledge of the contract as Chinowith seems to have had, and expect to take advantage of such a mistake in it, contrary to the meaning and wish of the original contracting parties, is what no court ought to permit; but more especially, where the mistake has proceeded from such person, and he has perceived in it sufficient certainty to rely thereon, in order to secure himself in the enjoyment of the rery land claimed thereby by the complaining party.
He purchased, in 1785, the benefit of the contract to secure himself in the possession of the land. It is proven that M’Carty, after that, declared that Chinowith had no authority or permission from him to settle there. Shall he then be permitted, contrary to will of the only parties to the contract, and contrary to his own understanding cf it, when he procured the bond from the widow, to defend the heir’s right, by a criticism on the im* I’jort rf the writing to ⅞ different place, where the ven *40 dor’s 'pre-emption was not, and. where he had no land ? The court think not. , > ,
L In mere equu IBble mterefts, shat which is .prior intiméis to he preferred»
The equity of the complainant to the land in question being prior to Chinowith's claim, and there being no act of his which can be construed to divest it, Curry, a mortgagee or,assignee under Chiñowith of a mere equity, cannot hold it against the complainant.
But if doubt could be entertained on this point, it appears by his answer that he -was apprised of the contract between M’Carty and Williamson, and relies on the same evasion which Chinowkh has set up in his de-fence.
The court deem it unnecessary to remark particularly on other points made in the defence. It is sufficient to say, if they could have been extended to affect the heir at law, which does not appear to the court, that Chino-with does not show that he was able to perform his undertaking in relation to them. For although he states that he was always ready to convey, yet he shows that it was not the fact. Besides, it is proven that he after-wardsseemedto rely on his being able to discharge the bond he had given to the three sons upon giving land lying out of this state. And, indeed, evidence still more conclusive against it arises from Curry’s situation. He was his security for land on the waters of Floyd’s fork, and as such has had about 300/. to pay; which proves not only a want of land there, but also the want of estate to satisfy the damages.
And so far from the heir at law having, by his conduct, induced Chino with to make valuable improvements on the land, much less encouraged him to settle thereon, that it not only appears in the cause, he, though an infant, objected to the bargain when it was made between his mother and Chinowith, but likewise threatened to sue for it about the year of St. Clair’s campaign, in 1791 ; which, it seems, was near the time he came of age*
Decree affirmed, ike.